IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DAMON LYNN STOVALL,        )
      Petitioner,        )    Civil Action No. 08-241 Erie
                           )
      v.                 )    District Judge Sean J. McLaughlin
                           )    Magistrate Judge Susan Paradise Baxter
RAYMOND LAWLER, et al.,    )
      Respondents.       )

# MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

## I.    RECOMMENDATION

It is respectfully recommended that the Petition For a Writ Of Habeas Corpus [ECF No. 1] be denied and that a certificate of appealability be denied.

## II.    REPORT

Petitioner Damon Lynn Stovall was convicted in the Erie County Court of Common Pleas of involuntary deviate sexual intercourse ("IDSI"), attempted rape, and related crimes. In his Petition For a Writ Of Habeas Corpus, which he has filed pursuant to 28 U.S.C. § 2254, Stovall raises the following two claims:

    **Claim 1**    His trial counsel was ineffective for failing to call as witnesses Angel Carr, Leonard Williams, and Mia Crockett to corroborate his defense that his sexual contact with the victim was consensual; and,

    **Claim 2**    His counsel was ineffective for failing to preserve the claim that his sentence was invalid.

[ECF No. 1].[1]

---

[1] Stovall also contends that his appellate counsel was ineffective for failing to raise or preserve these issues on appeal. The record establishes that these claims were raised in his post-conviction appeal and were decided on the merit by the state court. Therefore, it is unnecessary for Stovall to raise a "layered" claim of ineffective assistance of counsel.

1

### A. Relevant Background[2]

In January 2003, an Erie County jury found Stovall guilty of one count each of IDSI, criminal attempt at rape, simple assault, and indecent assault. Assistant Public Defender Keith H. Clelland, Esq., was his court-appointed counsel. The court imposed a total aggregate sentence of 18-36 years of imprisonment.

The Superior Court of Pennsylvania summarized the evidence introduced at trial as follows:

> [T]he victim, J.D., testified that on the evening of August 9, 2002, while driving Stovall to a friend's house, Stovall repeatedly tried to touch her chest, but she rebuffed his advances. Stovall and J.D. both went to the door when they arrived at the friend's home. As she turned to leave, Stovall grabbed J.D. from behind with his hands around her neck. N.T., 1/21/03, at 62-64.
>
> After J.D. fell to the ground, Stovall punched her in the face several times, used a stick to choke her, removed her clothing, tried to have sexual intercourse with J.D. but was unable to do so, and forced J.D. to perform oral sex on him while threatening to kill her. Id. at 66-68. J.D. was able to get away from Stovall. She ran to a house and the police were called. Id. at 70. J.D. told the police officer that she had been raped, and she was then taken by ambulance to the emergency room where rape kit samples were taken. Id. at 71. J.D. testified that she was given pain medication at the hospital and that she had cuts on one leg and one arm. Id. at 74. She stated that she did not have consensual sex with Stovall that night. Id. at 75.
>
> Carla Roberts ("Roberts"), the woman who allowed J.D. into her home, testified that J.D. was hysterical, crying, stated that she had been raped, and looked as if she had been "beat up." Id. at 80. The woman also testified that J.D. stated that she was afraid that "Piggy" (Stovall) was going to "come and hurt" her. Id. at 81. J.D. further stated that Stovall had pinned her down with a stick, and that she had fought him off as hard as she could, and started running. Id. at 82.
>
> Police officer Gerald Hermann testified that he arrived at Roberts's house and observed J.D., who was upset, whose face and neck area were red and scratched up, and who looked like she had been struck once or twice. Id. at 87. Hermann discovered J.D.'s clothes in the area where J.D. said the crime took place. Id. at 86-87.
>
> A forensic nurse, who was present in the emergency room when J.D. was treated, testified that during her examination of J.D., the nurse took cultures "inside the vaginal vault in the opening of the cervix." Id. at 98. A stipulation was entered into evidence

---

[2] Respondents have submitted the Common Pleas Court's file and transcripts, as well as the appellate briefs. The documents contained in the court's file are numbered 1 through 46 and shall be cited to as "CP Dkt. No. __ ."

2

that the vaginal swabs taken from J.D. contained semen, and that the semen was identified as Stovall's. Id. at 110-11.

Pamela Barber, a detective, testified that she interviewed J.D. on August 13, 2002. At that time, Barber observed that J.D. had a scratch on the left side of her face, her left eye was swollen, and J.D. had a "big goose egg." Id. at 114. Barber related that J.D. told her that Stovall came up behind her, and choked her to the point that she passed out. When she regained consciousness, her clothes had been removed, and Stovall was on top of her trying to penetrate her vagina with his penis. Id. at 115. Stovall told J.D. to "put it in," but J.D. was unable to because Stovall's penis was not erect. Id. Stovall also told J.D. to perform oral sex, which she did. Id. J.D. heard two girls walking down the street, at which point J.D. screamed. Id. The two girls then screamed, and Stovall became distracted, which allowed J.D. to escape. Id. at 115-16.

Stovall testified that he had sex with J.D., but that he did not harm her.

(CP Dkt. No. 26, Commonwealth v. Stovall, 951 WDA 2003, slip op. at pp. 1-4 (Pa.Super. June 22, 2004)).

In his direct appeal to the Superior Court, Stovall claimed that the verdict was against the weight of the evidence, and that there was insufficient evidence as a matter of law to support a finding of guilt. (*Brief for Appellant*, 951 WDA 2003 (Pa.Super. Jan. 21, 2004)). Ines M. Massella, Esq., also with the Public Defender's Office, represented him in his appeal.

On June 22, 2004, the Superior Court issued a Memorandum in which it rejected Stovall's claims on the merits and affirmed his judgment of sentence. (CP Dkt. No. 26, Stovall, 951 WDA 2003, slip op. at pp. 5-6). Next, Stovall filed a *pro se* motion under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541 *et seq.*, in which he raised the same claimed, as he does here, that his trial counsel was ineffective for failing to call as defense witnesses Angela Carr, Leonard Williams, and Mia Crockett. (CP Dkt. Nos. 27-28, 35).

The PCRA Court appointed William J. Hathaway, Esq., to represent Stovall and it scheduled an evidentiary hearing for May 24, 2006. At the beginning of that hearing, Hathaway informed the court that Stovall was unable to produce Carr, Williams, or Crockett to testify. He explained that he attempted

3

to contact them at the addresses that Stovall had given to him, but he received notice from the U.S. Postal Service that they no longer resided at those addresses. Hathaway eventually was able to locate Williams in Chicago, Illinois, and advised him of the PCRA hearing, but he received no response from Williams. Similarly, Stovall himself attempted to contact Carr and Crockett at "several addresses," but he did not receive responses from them either. (PCRA Hr'g Tr. at p. 2).

Because Stovall was unable to present evidence to support his claim, the PCRA Court denied it. (PCRA Hr'g Tr. at p. 6; CP Dkt. No. 38). Stovall, through Hathaway, filed an appeal with the Superior Court in which it was argued that the court had abused its discretion in failing to afford him a continuance of the PCRA hearing so that he could secure the presence of his three witnesses. Stovall also contended that his sentence was illegal. (*Brief for Appellant*, 1167 WDA 2006 (Pa.Super. Aug. 8, 2006); CP Dkt. No. 45 at p. 2).

On April 5, 2007, the Superior Court issued a Memorandum in which it affirmed the PCRA Court's decision. (CP Dkt. No. 45, Commonwealth v. Stovall, 1167 WDA 2006, slip op. (Pa.Super. Apr. 5, 2007)). It held that, given the fact that Hathaway's and Stovall's multiple efforts to contact Carr, Williams, and Crockett had been unsuccessful, the PCRA Court had not abused its discretion in refusing to grant a continuance. (Id. at p. 6). It also observed that:

> Aside from the victim, the Commonwealth produced the woman into whose home the victim sought safety and the authorities who interviewed the victim. These witnesses were consistent in depicting the victim as traumatized by the events and exhibited physical evidence of such assault…. As a result, we do not have a case where the only evidence of a crime came from the victim, but her account was buttressed by witnesses who observed her following the assault, which testimony was consistent with someone who resisted [Stovall's] sexual advances without success.

(Id. at p. 5 n.2).

In disposing of Stovall's assertion that counsel was ineffective for failing to preserve the claim that his sentence was illegal, the Superior Court held:

4

> As to [Stovall's] illegality of sentence claim recited in his supplemental appellate brief, we find it to be meritless as well. Initially, we note that the legality of a sentence is a non-waivable issue and subject to review at any time or *sua sponte* by an appellate court. Commonwealth v. Jacobs, 900 A.2d 368, 374 (Pa.Super. 2006) (*en banc*). We have examined the grading of each offense for which [Stovall] was convicted and find the sentence imposed to be within the statutory limits; to wit: 1) IDSI is a felony of the first-degree – sentence shall be fixed by the court at not more than 20 years; 2) attempted rape was also graded a felony of the first-degree; 3) simple assault is a misdemeanor of the second-degree – sentence shall be fixed by the court at no more than two years; and 4) indecent assault was likewise graded a misdemeanor of the second-degree. [Stovall] was sentenced 102 to 204 months for IDSI, 30 to 180 months for attempted rape, 12 to 24 months for simple assault, and 12 to 24 months for indecent assault. See Pa.C.S.A. §§ 1103, 1104; N.T. Sentence, 2/28/03, at 16. All sentences were ordered to be served consecutively, but this event does not render the sentence illegal either individually or cumulatively.

(Id. at pp. 6-7 n.3).

The Supreme Court of Pennsylvania denied Stovall's subsequent petition for allowance of appeal. (CP Dkt. No. 46). Next, Stovall filed the instant petition for writ of habeas corpus with the U.S. District Court for the Middle District of Pennsylvania. [ECF No. 1]. That court transferred the case to this Court, the Respondents were served, and they filed a motion to dismiss based solely on the statute of limitations, 28 U.S.C. § 2244(d)(1). [ECF No. 11]. The Court denied their motion [ECF Nos. 15-16], and they subsequently filed their Answer [ECF No. 19] and the state court record. The case is now ripe for review.

### B.    Discussion

Because the Superior Court denied Stovall's two claims on the merits, this Court's review of them is limited. Pursuant to 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal habeas relief may not be granted for claims the state court has adjudicated on the merits unless it is shown that the state court's decision "was contrary to" federal law then clearly established in the holdings of the U.S. Supreme Court, § 2254(d)(1); or that it "involved an

5

unreasonable application of" such law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2). See, e.g., Harrington v. Richter, — U.S. — , 131 S.Ct. 770, 783-92 (2011); Williams v. Taylor, 529 U.S. 362, 405-06 (2000).

The "clearly established Federal law" for AEDPA purposes in which to analyze Stovall's claims of ineffective assistance is set forth in Strickland v. Washington, 466 U.S. 668 (1984). In Strickland, the Supreme Court held that in order to establish that counsel's service was constitutionally deficient, a petitioner must demonstrate: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that the deficient performance prejudiced the defense. See also Harrington, 131 S.Ct. at 786-88.

Because Stovall did not produce Carr, Williams, or Crockett to support his claim that Attorney Clelland was ineffective for failing to call them at trial, he has failed to satisfy his burden of demonstrating either of Strickland's elements. As for his other claim, he has offered this Court no argument to support his contention that his sentence is illegal, and therefore he has failed to show that ay of his attorneys were ineffective for failing to raise the issue direct appeal. And, in any event, he also cannot demonstrate that he was prejudiced because the Superior Court considered his allegation that his sentence was illegal in the PCRA appeal. It rejected that allegation and there is no basis for this Court to disturb that decision.

Based upon all of the forgoing, Stovall has failed to demonstrate that his counsel was ineffective, let alone that he is entitled to habeas relief under AEDPA's limited standard of review, 28 U.S.C. § 2254(d). Accordingly, his petition should be denied.

### C. Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. 28 U.S.C. § 2253 provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Applying that standard here, jurists of reason would not find it debatable whether Stovall's claims should be denied. Accordingly, a certificate of appealability should be denied.

## III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Petition For Writ of Habeas Corpus [ECF No. 1] be denied and that a certificate of appealability be denied.

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, Petitioner is allowed to file objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to file timely objections may constitute a waiver of any appellate rights. See Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: February 24, 2011
cc: The Honorable Sean J. McLaughlin
United States District Judge